Filed 12/17/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>K.P.,<br><br>    Defendant and Appellant. | D074577<br><br><br>(Super. Ct. No. RIF1303602) |

APPEAL from a judgment of the Superior Court of Riverside County, Ronald L. Taylor, Judge.  Affirmed.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meredith S. White and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found K.P. not guilty by reason of insanity after he shot and killed his father.  In this appeal, we address whether the recent amendment to subdivision (h) of

Penal Code[1] section 12022.53, giving a trial court discretion to strike or dismiss a firearm enhancement, applies retroactively to a person—whose case is not yet final—committed to a state hospital after being found not guilty by reason of insanity.[2] As we shall explain, we conclude that amended section 12022.53 does not apply to an insanity acquittee.

Anticipating this result, K.P. contends that denying an insanity acquittee the ability to have a firearm enhancement under section 12022.53, subdivision (d) dismissed based on a trial court's exercise of discretion under section 12022.53, subdivision (h) violates the equal protection clause of the state and federal constitutions. We disagree as a rational basis exists for the disparity.

## BACKGROUND

Seventeen-year-old K.P. was charged as an adult with murder after he walked into his father's bedroom and shot him five times with a shotgun. (§ 187, subd. (a).) Fearing that his father might get up and kill him, K.P. ran back to his bedroom, grabbed a loaded AR-15, and shot his father five more times. K.P. then listened as his mother called 911 and waited for police to arrive. During a police interview after the crime, K.P. claimed that his father had verbally bullied him, that he could not be around his father anymore, and that he "made a terrible decision."

---

[1] Undesignated statutory references are to the Penal Code.

[2] For brevity, we refer to a person found not guilty by reason of insanity as an insanity acquittee.

2

K.P. pleaded not guilty and not guilty by reason of insanity. (§ 1026.) At the guilt phase of trial, a jury found K.P. guilty of second degree murder and found true the allegation that he personally used a firearm causing death (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8)). At a subsequent bifurcated proceeding, the jury determined that K.P. was insane when he committed the offense. The trial court committed K.P. to Patton State Hospital and fixed his maximum period of confinement at 40 years to life, representing 15 years to life for the murder and a consecutive term of 25 years to life for K.P.'s act of personally discharging a firearm causing death. K.P. timely appealed.

DISCUSSION

## I. *LAW GOVERNING CRIMINAL DEFENDANTS FOUND TO BE INSANE*

A defendant who pleads not guilty by reason of insanity is presumed sane at the time of the offense and a jury determines whether the defendant is guilty of the charged offense. (§ 1026, subd. (a).) If the defendant is found guilty, then the jury determines whether the defendant was insane at the time of the offense. (*Ibid.*) To establish this defense the accused person must prove "by a preponderance of the evidence that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense." (§ 25, subd. (b).) Our Supreme Court has interpreted this statutory language to mean that insanity can be shown under either the "nature and quality" or the "right from wrong" prong of the test. (*People v. Skinner* (1985) 39 Cal.3d 765, 775-777; *People v. Powell* (2018) 5 Cal.5th 921.)

3

Where a criminal defendant has been found to have been insane at the time the offense was committed, "unless it appears to the court that the sanity of the defendant has been recovered fully," the court may order the defendant committed to the "State Department of State Hospitals" or any other appropriate facility for care and treatment. (§ 1026, subd. (a).) Once a criminal defendant has been found not guilty by reason of insanity, that person "is no longer a criminal defendant, but a person subject to civil commitment." (*People v. Lara* (2010) 48 Cal.4th 216, 222, fn. 5.) "The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous." (*Jones v. United States* (1983) 463 U.S. 354, 368 (*Jones*).)

In a commitment order the trial court is required to state the " 'maximum term of commitment'  [meaning] the longest term of imprisonment which could have been imposed for the offense or offenses of which the person was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which could have been imposed less any applicable credits as defined by Section 2900.5, and disregarding any credits which could have been earned pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3." (§ 1026.5, subd. (a)(1).)

At the end of the maximum term of commitment, the state may petition to extend the commitment. (§ 1026.5, subd. (b)(1)-(2).) After a jury trial, the court may extend the commitment for an additional two years if the person "by reason of a mental disease,

4

defect, or disorder represents a substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1), (4), (8).) Any additional recommitments are for two years and require additional jury trials. (§ 1026.5, subd. (b)(8).) An insanity aquittee who recovers his or her sanity need not remain confined for the maximum term of commitment; rather, release is possible at any time following a mandatory, 180-day commitment period (§ 1026.2, subd. (d)) if the individual demonstrates fitness for release, first by successfully completing one year under supervision in a community mental health program and then in a sanity-restoration trial. (§ 1026.2 subd. (e).)

## II. *AMENDED SECTION 12022.53 DOES NOT APPLY TO INSANITY AQUITTEES*

At the time of K.P.'s sentencing hearing, the former version of section 12022.53 required the trial court to impose a consecutive enhancement of 25 years to life for the jury's true finding on the allegation that K.P. personally and intentionally discharged a firearm in committing the murder. (See *People v. Hurlic* (2018) 25 Cal.App.5th 50, 54; former § 12022.53, subds. (d), (h).) "On October 11, 2017, the Governor signed Senate Bill 620, which amends section 12022.53 to give trial courts the authority to strike in the interests of justice a firearm enhancement allegation found true under that statute." (*People v. Watts* (2018) 22 Cal.App.5th 102, 119.) "Our Legislature or the voters may 'expressly . . . declare[ ]' an intent to apply the new law retroactively [citation]; and, absent an express indication to the contrary, courts will infer an intent to apply a new law retroactively to all nonfinal convictions where that new law 'mitigat[es]' or lessens 'the punishment for a particular criminal offense' [citations] . . . Applying this body of law, the courts have unanimously concluded that Senate Bill No. 620's (2017-2018 Reg. Sess.)

5

grant of discretion to strike firearm enhancements under section 12022.53 applies retroactively to all nonfinal convictions." (*Hurlic*, at p. 56.)

K.P. asserts that amended section 12022.53 applies to him and that his case must be remanded to allow the trial court to exercise its discretion in deciding whether to dismiss his firearm enhancement. The People assert that amended section 12022.53 does not apply to insanity aquittees because the Legislature included no language in amended section 12022.53 suggesting that it applies to insanity aquittees. Moreover, the People note that just six months before enacting amended section 12022.53, the Legislature expressly extended the benefits of Propositions 36 and 47 to insanity aquittees. The People assert the omission of similar language in amended section 12022.53 expresses a different legislative intent with regard to amended section 12022.53. We agree with the People.

Proposition 36 enacted section 1170.126, which gives many inmates now serving a third strike sentence an opportunity to request resentencing as a second-strike offender if their "sentence under [Proposition 36] would not have been an indeterminate life sentence." (§ 1170.126, subd. (a)-(c).) The court in *People v. Dobson* (2016) 245 Cal.App.4th 310 (*Dobson*), interpreted Proposition 36 as not applying to insanity acquittees committed to the state hospital system based on its express term that "section 1170.126 applies exclusively to certain 'persons presently serving an indeterminate term of *imprisonment*. . . .' (§ 1170.126, subd. (a), italics added.) Dobson is not presently serving any term of imprisonment whatsoever; he has been committed to a state hospital

6

as an [insanity aquittee].  He falls outside the scope of section 1170.126's plain language."  (*Dobson*, at p. 315.)

Effective June 27, 2017, the Legislature added section 1170.127 to "nullify" *Dobson*, *supra*, 245 Cal.App.4th 310.[3]  (Legis. Counsel's Dig., Assem. Bill No. 103, approved by Governor, June 27, 2017 (2017-2018 Reg. Sess.) § 2, p. 8.)  The Legislature also amended section 1170.18, subdivision (p) of Proposition 47 to similarly allow people committed to a state hospital upon a not guilty by reason of insanity finding to petition a court to have certain felony offenses reduced to misdemeanors.[4]  (*Ibid.*)

About six months later, the Legislature amended section 12022.53 to provide: "The court may, in the interest of justice pursuant to Section 1385 and *at the time of sentencing*, strike or dismiss an enhancement otherwise required to be imposed by this section.  The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."  (Amended § 12022.53, subd. (h), italics added; see Stats. 2017, ch. 682, § 2, eff. Jan. 1, 2018.)  An insanity aquittee is not sentenced; he or she is committed to a state hospital for treatment.  (§ 1026.)  Thus, by its express terms,

---

3    Subdivision (a) of section 1170.127 provides in part:  "A person who is committed to a state hospital after being found not guilty by reason of insanity pursuant to Section 1026 may petition the court to have his or her maximum term of commitment, as established by Section 1026.5, reduced to the length it would have been had Section 1170.126 been in effect at the time of the original determination."

4    Subdivision (p)(1) of section 1170.18 provides in part:  "A person who is committed to a state hospital after being found not guilty by reason of insanity pursuant to Section 1026 may petition the court to have his or her maximum term of commitment, as established by Section 1026.5, reduced to the length it would have been had the act that added this section been in effect at the time of the original determination."

7

amended section 12022.53 does not apply to insanity aquittees.[5]  (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 38 [" 'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.' "].)

The Legislature "is presumed to be aware of all laws in existence when it passes or amends a statute.  [Citations.] ' "The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended." ' "  (*In re Greg F.* (2012) 55 Cal.4th 393, 407.)  Accordingly, if the Legislature had wanted to extend the relief under amended section 12022.53 to insanity aquittees, it knew how to do so.

K.P. acknowledges this established principle of statutory construction, but contends that, if amended section 12022.53 is construed to exclude insanity aquittees, the statute violates equal protection.  We address this contention below.[6]

---

[5]      "Only when the language of a statute is susceptible to more than one reasonable construction is it appropriate to turn to extrinsic aids, including the legislative history of the measure, to ascertain its meaning."  (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1055.)  Nevertheless, we reviewed the legislature history of Senate Bill 620 and found that it is silent regarding the Legislature's intent regarding whether amended section 12022.53 applies to insanity aquittees.

[6]      Although not argued by the parties, there is an additional reason suggesting that the Legislature did not intend amended section 12022.53 to apply to insanity acquittees. Under subdivision (a)(1) of section 1026.5 the trial court is required to impose the " 'maximum term of commitment' " which includes "any additional terms for enhancements . . . which *could have been imposed*." (Italics added.)  This language requires that the trial court impose the additional terms for any firearm enhancements.  Thus, even assuming, arguendo, that the discretion given to trial courts by amended section 12022.53

8

III.  *NO EQUAL PROTECTION VIOLATION*

A.  *General Legal Principles*

" ' "The equal protection guarantees of the Fourteenth Amendment of the United States Constitution and the California Constitution are substantially equivalent and we analyze[] them in a similar fashion." ' "  (*People v. Noyan* (2014) 232 Cal.App.4th 657, 666.)  " 'Equal protection requires the state to treat similarly situated persons alike, with some exceptions in which the disparate treatment is sufficiently related to the purpose of the [law] in question.'  [Citation.]  The equal protection clause applies to civil commitment statutes 'to ensure that a particular group of civil committees is not unfairly or arbitrarily subjected to greater burdens.'  [Citation.]  The similarly situated inquiry examines whether two groups are similarly situated for purposes of the law challenged, not whether they are similarly situated for all purposes.  [Citation.]  The threshold question is 'whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws.'  [Citation.]  'If persons are not similarly situated for purposes of the law, an equal protection claim fails at the threshold.' "  (*People v. Bocklett* (2018) 22 Cal.App.5th 879, 892.)

" 'If groups are similarly situated but treated differently, the state must then provide a rational justification for the disparity.  [Citation.]  However, a law that interferes with a fundamental constitutional right or involves a suspect classification,

could apply to insanity acquittees, subdivision (a)(1) of section 1026.5 takes that discretion away.

9

such as race or national origin, is subject to strict scrutiny requiring a compelling state interest.' " (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 686-687.)

B. *Analysis*

K.P. concedes that he does not fall within the literal terms of amended section 12022.53 because he was committed to a state hospital and not sentenced. He claims that a literal application of amended section 12022.53, subdivision (h) violates his constitutional right to equal protection under the state and federal constitutions because, as an insanity aquittee who used a firearm to murder, he is similarly situated with criminal defendants adjudicated for the same crime and enhancement. For purposes of analysis, we assume without deciding that insanity aquittees and criminal defendants convicted of the same crime and subjected to the same firearm enhancement are similarly situated. (*In re C.B.* (2018) 6 Cal.5th 118, 134 [applying similarly situated assumption]; *People v. Chatman* (2018) 4 Cal.5th 277, 290 [same].)

Relying on *People v. Olivas* (1976) 17 Cal.3d 236 (*Olivas*), K.P. argues that in determining whether the differential treatment of insanity aquittees and criminal defendants is justified, we should apply the strict scrutiny standard of review, under which "the state must first establish that it has a compelling interest which justifies the law and then demonstrate that the distinctions drawn by the law are necessary to further that purpose." (*Id.* at p. 251, italics omitted.) He claims that strict scrutiny is appropriate because amended section 12022.53 affects a fundamental interest, his personal liberty.

In *Olivas*, *supra*, 17 Cal.3d 236, the Supreme Court addressed the commitment of a juvenile convicted in adult court to the Youth Authority for a period longer than the

10

maximum prison sentence that might have been imposed for the same offense if committed by a person over the age of 21 years. (*Id.* at p. 239.) In analyzing whether this disparity violated equal protection, the court stated that the juvenile had a " 'personal liberty interest' " in being free from incarceration as well as other restraints and controls by the Youth Authority. (*Id.* at p. 245.) The court determined that personal liberty is a fundamental interest and that strict scrutiny applied to the challenged classification. (*Id.* at p. 251.)

K.P. contends that strict scrutiny applies here because he is potentially subject to a longer period of incarceration than similarly situated criminals to whom amended section 12022.53 applies. As a preliminary matter, the subject of the classification here is not incarceration because insanity acquittees are not incarcerated; rather, they are committed to a state hospital for treatment until the person recovers his or her sanity. (§§ 1026, subd. (a), 1026.2.) In any event, our high court has explained that *Olivas*, *supra*, 17 Cal.3d 236 should not be read as requiring strict scrutiny review "whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes." (*People v. Wilkinson* (2004) 33 Cal.4th 821, 837; *People v. Flores* (1986) 178 Cal.App.3d 74, 88 [appellant does not have a fundamental interest in a specific term of imprisonment].) Rather, where the issue is not whether a deprivation of an individual's liberty will occur, but rather the duration of that deprivation, rational basis review is appropriate because " ' " 'the power to define crimes and fix penalties is vested exclusively in the legislative branch.' "' " (*People v. Farley* (2009) 46 Cal.4th 1053, 1119.) Accordingly, we find that the rational basis standard

11

applies because the issue here is the duration of the commitment period, not whether insanity acquittees will be deprived of their liberty.[7]

Under the rational basis standard, " 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' [Citation.] 'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record." ' [Citation.] To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citation.] If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881.)

---

7    K.P. appears to argue that strict scrutiny review should apply because the burden of proof for continued commitment shifts to the People at the end of the maximum term of commitment. Specifically, insanity acquittees have the burden to prove restoration of sanity by a preponderance of the evidence to obtain release *before* the end of their maximum term of commitment (§ 1026.2), and the People have the burden to prove beyond a reasonable doubt that an insanity acquittee convicted of a felony "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others" to obtain a two-year commitment extension *after* expiration of the maximum commitment term. (§ 1026.5, subd. (b)(1), (8).) This difference, however, again impacts the length of an insanity acquittee's commitment, not whether a deprivation of liberty will occur.

Amended section 12022.53 gives a trial court discretion to strike or dismiss a firearm enhancement imposed on a criminal defendant. (§ 12022.53, subd. (h).) Amended section 12022.53 does not extend this benefit to insanity acquittees. We conclude that a rational basis exists for the Legislature to exclude insanity acquittees from the ameliorative provisions of amended section 12022.53.

The Legislature could have concluded that, given the distinct purpose and structure of the insanity commitment scheme (as distinguished from the purpose of a prison term), striking or dismissing firearm enhancements for insanity acquittees would not further the purpose of insanity commitments and serve no practical purpose.

Criminal defendants are sentenced to a period of incarceration "to reflect society's view of the proper response to commission of a particular criminal offense, based on a variety of considerations such as retribution, deterrence, and rehabilitation." (*Jones*, *supra*, 463 U.S. at pp. 368-369.) In sharp contrast, the purpose of a hospital commitment following an insanity acquittal is to treat the individual's mental illness and protect the individual and society. (*Id.* at p. 368.) Additionally, there is no correlation between the severity of the offense and length of time necessary for recovery of sanity. (*Id.* at p. 369.) Accordingly, the United States Supreme Court pronounced that "[t]he length of the acquittee's hypothetical criminal sentence . . . is irrelevant to the purposes of his commitment." (*Ibid.*)

Under the California insanity commitment scheme, insanity aquittees must be confined or placed on outpatient status for a minimum of 180 days from the date of the order of commitment. (§ 1026.2, subd. (d).) After this minimum commitment term,

13

insanity aquittees may annually petition for release on a showing, by a preponderance of the evidence, that the individual's sanity has been restored. (§ 1026.2, subds. (h), (j), (k).) Insanity aquittees who were committed based on the commission of a felony and who represent a substantial danger of physical harm to others by reason of a mental disease, defect, or disorder may have their commitments extended beyond the maximum term of commitment in two-year increments when the prosecution proves, beyond a reasonable doubt, that "by reason of a mental disease, defect, or disorder" the defendant "represents a substantial danger of physical harm to others" and that as a result of the mental disease, defect or disorder, the defendant had, "at the very least, serious difficulty controlling his potentially dangerous behavior." (§ 1026.5, subd. (b)(1), (8); *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165.) Accordingly, insanity aquittees can potentially remain hospitalized for life.

Thus, while striking or dismissing a firearm enhancement would shorten the maximum term of commitment, it would be of no practical benefit to insanity aquittees because expiration of the maximum term of commitment does not ensure their release. Instead, insanity aquittees are provided a statutory procedure to seek and obtain release from commitment, potentially well before expiration of their maximum term of commitment. (§ 1026.2.) In contrast, striking or dismissing a firearm enhancement for a criminal defendant has the immediate benefit of shortening the individual's period of incarceration by 10, 20 or 25 years. (§ 12022.53, subds. (b), (c), (d).)

In summary, we conclude that the Legislature could rationally distinguish between insanity aquittees and criminal defendants when enacting amended section 12022.53. According, we discern no equal protection violation.

## DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

DATO, J.