Filed 3/1/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STEVEN JAY DOBSON,<br><br>    Defendant and Appellant. | F069588<br><br>(Fresno Super. Ct. No. CF97599270)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

Charles M. Bonneau, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Steven Jay Dobson contends Penal Code section 1170.126[1] should be "interpreted" to permit people found not guilty by reason of insanity and committed to a state hospital ("NGI committees")[2] to petition for recalculation of their maximum term of confinement. He also asserts that a contrary interpretation would violate equal protection principles. We reject his arguments and affirm.

## FACTS

"In 1998, appellant Steven Jay Dobson pleaded guilty to vehicle theft (Veh. Code, § 10851, subd. (a)) and admitted four prior strike convictions. He also pleaded not guilty by reason of insanity. The trial court found him not guilty by reason of insanity (Pen. Code, § 1026) … and ordered him committed to Patton State Hospital for a maximum term of confinement of 25 years to life." (*People v. Dobson* (2008) 161 Cal.App.4th 1422, 1425–1426 (*Dobson*).)

On March 14, 2014, Dobson filed a petition to modify his maximum term of confinement. Dobson argued he falls within the spirit of Proposition 36, The Three Strikes Reform Act of 2012,[3] and that concluding otherwise would run afoul of equal protection principles. Dobson requested that the superior court "recalculate his maximum term of confinement to that of a two-strike term which would be the limit if his case had arisen today." The District Attorney argued that section 1170.126 was facially inapplicable to insanity committees.

The court denied Dobson's petition, and he appeals.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] We refer to a person who is committed to a hospital after being found not guilty by reason of insanity under sections 1026 and 1026.5 as an "NGI committee." (See *Hudec v. Superior Court* (2015) 60 Cal.4th 815, 827, 832.)

[3] We refer to the Three Strikes Reform Act of 2012 as the "Three Strikes Reform Act" or the "Act."

## DISCUSSION

### *Overview of California's Criminal Commitment Scheme*

#### Purpose

"A successful insanity plea relieves the defendant of all criminal responsibility. [Citation.] The commitment of the defendant to a state hospital 'is in lieu of criminal punishment and is for the purpose of treatment, not punishment. [Citation.]' [Citation.] 'The purpose of committing an insanity acquittee is two-fold: to treat his mental illness and to protect him and society from his potential dangerousness. [Citation.]' [Citation.]" (*Dobson*, *supra*, 161 Cal.App.4th at p. 1432.)

In contrast, the purpose for imprisoning convicted criminals is punishment. (§ 1170, subd. (a)(1).)

#### Procedural Overview

"When a criminal defendant pleads not guilty by reason of insanity, the finder of fact must determine by a preponderance of the evidence whether the defendant was insane at the time of the offense. (§ 1026, subd. (a); [citation].) … If the defendant succeeds in proving his insanity at the time of the offense, commitment follows unless the court determines that the defendant has fully recovered his sanity. (§ 1026, subds. (a), (b).)" (*People v. Tilbury* (1991) 54 Cal.3d 56, 63.)

An NGI committee is not always confined for the maximum term. An NGI committee may be released before the maximum term is up if he or she prevails at a sanity restoration trial and supervision period. (*People v. Tilbury*, *supra*, 54 Cal.3d at p. 63.) Conversely, even if an NGI committee has been confined for the entire maximum term, "the district attorney may petition to extend the period of commitment pursuant to section 1026.5 where the defendant has committed a felony and 'by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others.' [Citations.]" (*Dobson*, *supra*, 161 Cal.App.4th at p. 1434.)

<u>Calculating an NGI Committee's Maximum Term of Commitment</u>

"The maximum term of commitment is equal to the longest term of imprisonment which could have been imposed for the offenses of which the defendant was convicted. (§ 1026.5, subd. (a)(1).)" (*People v. Tilbury*, *supra*, 54 Cal.3d at p. 63.) Under this calculation, an NGI committee (like Dobson) who committed vehicle theft (Veh. Code, § 10851, subd. (a)) with four prior strikes would receive a maximum term of confinement of 25 years to life. (See §§ 667, subd. (e)(2)(A)(ii); 1026.5, subd, (a)(1).)

*The Three Strikes Reform Act's Impact on the Calculation of an NGI Committee's Maximum Term of Commitment*

Dobson would not receive the same maximum term of confinement were he committed today. That is because the Three Strikes Reform Act "diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. (§§ 667, 1170.12.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167–168.) Since the maximum term of confinement for an NGI committee is based on the sentence attached to the underlying crime (§ 1026.5, subd. (a)), the Three Strikes Reform Act effectively altered the maximum term of confinement to which certain NGI committees with more than two prior strikes are subject.

When these changes implemented by the Act are applied to a qualifying[4] defendant who is found not guilty by reason of insanity of vehicle theft (Veh. Code,

---

[4] Dobson argues that none of his prior strikes would disqualify him for resentencing under the Three Strikes Reform Act and requests that we take judicial notice of an October 1, 1984, minute order in support of his contention. We will grant the unopposed request. (See Evid. Code, § 452, subd. (d).) However, for the reasons explained below, whether or not Dobson has disqualifying strikes on his record is not dispositive as to the outcome of this appeal. Therefore, we do not decide that issue.

§ 10851, subd. (a)) with four strike priors[5], the maximum term of confinement is now six years, rather than the 25 years to life imposed under the old scheme.[6]

*Postconviction Petition Under Section 1170.126*

Section 1170.126 creates a postconviction proceeding "whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)" (*People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 168.)

## I. Section 1170.126 Does not Permit an NGI Committee to Petition for Recalculation of a Maximum Term of Confinement

Dobson contends that he, as an NGI committee, may avail himself of the postconviction petition procedure set forth in section 1170.126. We disagree.

By its terms, section 1170.126 applies exclusively to certain "persons presently serving an indeterminate term of *imprisonment* …." (§ 1170.126, subd. (a), italics added.) Dobson is not presently serving any term of imprisonment whatsoever; he has been committed to a state hospital as an NGI committee. He falls outside the scope of section 1170.126's plain language.

Dobson acknowledges section 1170.126 has no provision for the recall of an insanity commitment to recalculate the maximum term of confinement.[7] But, as shown

---

[5] Again, Dobson acknowledges that he admitted to four strike priors in 1998 but contends that admission was erroneous. Since we conclude Dobson is ineligible to petition for recall for other reasons, we need not resolve this factual issue.

[6] Compare § 667, subd. (e)(2)(A)(ii) [25 years to life] with Vehicle Code section 10851, subdivision (a) [vehicle theft punishable, *inter alia*, "pursuant to subdivision (h) of Section 1170"]; section 1170, subdivision (h)(1) ["felony punishable pursuant to this subdivision … shall be punishable by a term of imprisonment … for 16 months, or two or three years"]; section 667, subdivisions (e)(1) and (e)(2)(C) [defendant with two or more prior strikes has his or her determinate sentence doubled if current felony is nonviolent and nonserious, etc.].

above, the plain language of the statute goes further than that. Section 1170.126 is not silent concerning its applicability to people who are not imprisoned, it expressly excludes them. (See § 1170.126, subd. (a).)

Dobson argues "[t]here was no *intent* in the Initiative, express or implied, to omit insanity committees from the recall provision." (Italics added.) This is far from clear as a factual matter, since the statute expressly limits itself to certain "persons presently serving an indeterminate term of imprisonment …." (§ 1170.126, subd. (a).) But more fundamentally, the contention is a non sequitur. The plain language of a statute may not be altered " 'to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*Trope v. Katz* (1995) 11 Cal.4th 274, 280.) Dobson needs to do more than convince us his urged expansion of the statutory language would not violate a purpose of the Act. Instead, he must show that his proposed revision is necessary to accomplish a purpose of the Act that actually appears in its text or history.

Perhaps recognizing the deficiency of this argument posed in the opening brief, Dobson asserts in his reply brief that the primary purpose of the Three Strikes Reform Act was to "restore prisoners to freedom and productive life where possible." Even if we assumed for the sake of argument that Dobson has accurately characterized one of the Act's purposes, it would not help him.

No legislation pursues its primary purpose at all costs. (See *Rodriguez v. United States* (1987) 480 U.S. 522, 525–526.) "[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." (*Id.* at p. 526, original italics.) These principles hold true here. While the Act undoubtedly sought to relieve prison overcrowding by allowing certain nonviolent inmates to reduce their life sentences (*People v. Brimmer* (2014) 230 Cal.App.4th 782,

---

[7] Dobson also acknowledges that section 1026.5 does not provide a basis for reducing the maximum term of confinement when the maximum exposure on the charged crime changed after the commitment.

793), it also was carefully crafted to apply only to certain people.  (See *People v. Chubbuck* (2014) 231 Cal.App.4th 737, 748.)  Nothing in the text or history of the Act suggests that Dobson, as an NGI committee, is one of those people.

## II.     Dobson has Failed to Present a Viable Equal Protection Claim

Dobson argues that section 1170.126 violates equal protection principles if it does not apply to him.  We disagree.

*Rational Basis Review*

A "rational basis test applies to equal protection challenges based on sentencing disparities.  [Citations.]"[8]  (*People v. Ward* (2008) 167 Cal.App.4th 252, 258.)

Under the rational basis test, " 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' [Citations.]" (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881 (*Johnson*).)  The government's underlying rationale need not " 'be empirically substantiated.  [Citation.]' " (*Ibid*.)

"To mount a successful rational basis challenge, a party must negate ' "every conceivable basis" ' that might support the disputed statutory disparity.  [Citations.]  If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' [Citations]." (*Johnson*, *supra*, 60 Cal.4th at p. 881.)

*Comparison Classes Identified by Dobson*

Dobson argues he is similarly situated to three classes of persons:  (1) defendants convicted of "the same or similar offenses in the same time period, but who did not plead insanity or were not found insane"; (2) defendants convicted of crimes now and in the future who are potentially subject to an insanity commitment but will have lesser maximum terms of commitment under the Three Strikes Reform Act; and (3) NGI

---

**8** While Dobson was committed to a state hospital rather than sentenced to prison, his claim bears substantial similarities to a sentencing disparity claim.

committees subject to a *determinate* maximum sentencing lid who were committed at the time of Dobson's current offense. We address each in turn.

### A. Dobson Failed to Negate Every Conceivable Basis for the Statute's Disparate Treatment Between Himself and Those Convicted of Similar Offenses in the Same Time Period

Dobson argues he was similarly situated to, yet treated differently from, felons convicted for the same or similar offenses (i.e., vehicle theft) near the time Dobson was committed. We conclude Dobson cannot meet his heavy burden in demonstrating there is no rational basis for treating pre-Act[9] NGI committees differently than pre-Act convicted felons. It is true that the Act permits some felons convicted of crimes before the Act to petition for resentencing without granting an analogous right to NGI committees. However, that disparate treatment has a rational relationship to a legitimate government purpose. The Three Strikes Reform Act purportedly sought to, among other goals, reduce prison populations in order to ensure dangerous criminals were not released early due to overcrowding. (*People v. Yearwood*, *supra*, 213 Cal.App.4th at pp. 171, 175.)[10] Dobson provides no evidence that NGI commitments are causing an equivalent overcrowding problem in state hospitals. Absent such a showing, it is rational to permit some imprisoned felons to have their sentences reduced without providing a similar procedure for NGI committees.[11] In sum, Dobson has failed to carry his burden to negate " ' "every

---

[9] We use "pre-Act" as a shorthand reference to those sentenced or committed for acts committed around the time Dobson committed the vehicle theft underlying his present commitment – well before the Three Strikes Reform Act was passed and became effective.

[10] One of the Voter Information Guide arguments in favor of the Act claimed " 'Prop. 36 will help stop clogging overcrowded prisons with non-violent offenders, so we have room to keep violent felons off the streets.' " (*People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 171.)

[11] Moreover, NGI committees already have a procedure for seeking early release from commitment. (See § 1026.2.)

conceivable basis" ' that might support the disputed statutory disparity.  [Citations.]"
(*Johnson*, *supra*, 60 Cal.4th at p. 881.)

### B. Dobson Failed to Negate Every Conceivable Basis for the Statute's Disparate Treatment Between Himself and Current Felons

Dobson argues he is also similarly situated to present-day felons convicted under the Act.  Some present-day felons with two or more nondisqualifying strikes will be sentenced as second strike offenders.  (See *People v. Yearwood*, *supra*, 213 Cal.App.4th at pp. 167–168.)  Dobson, however, was sentenced as a third strike offender.

But Dobson is different than a current (or future) felon in two respects.  First, his judgment became final long before the Three Strikes Reform Act became effective.  Numerous courts, including the California Supreme Court, have rejected claims that "an equal protection violation [arises] from the timing of the effective date of a statute lessening the punishment for a particular offense." (*People v. Floyd* (2003) 31 Cal.4th 179, 188.)  Second, he is subject to a hospital commitment, not imprisonment.  And as noted above, the Act's disparate treatment between NGI committees and certain prison inmates bears a rational relationship to a legitimate government objective:  reducing overcrowding at prisons.  Dobson has not shown an equivalent overcrowding problem exists in state hospitals.  He has therefore failed to negate " ' "every conceivable basis" ' that might support the disputed statutory disparity.  [Citations.]" (*Johnson*, *supra*, 60 Cal.4th at p. 881.)

### C. Dobson Failed to Develop his Claim that the Statute Improperly Treats him Differently than Pre-Act Insanity Committees Subject to a Determinate Maximum Term of Confinement

Dobson also contends he is similarly situated to pre-Act insanity committees who were committed subject to a *determinate* maximum term of confinement.  He argues that such a committee would "undoubtedly" have their maximum term of commitment recalculated "either administratively or as a result of court order."  Dobson does not

9.

explain why this would occur and cites no supporting authority.[12]  Consequently, we consider this contention forfeited.  (See *California Farm Bureau Federation v. California Wildlife Conservation Bd.* (2006) 143 Cal.App.4th 173, 193 [court of appeal "may treat as forfeited arguments merely asserted without support"].)

## DISPOSITION

The order denying Dobson's Penal Code section 1170.126 petition is affirmed.

_____
POOCHIGIAN, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
PEÑA, J.

---

**[12]** After making this assertion, Dobson's brief goes on to discuss *In re Estrada* (1965) 63 Cal.2d 740 and rules concerning the retroactivity of ameliorative penal statutes. Dobson does not explain, however, how those rules would permit a pre-Act NGI committee to have a maximum determinate term of confinement recalculated under the Act.  Moreover, the rule of retroactivity embodied in *Estrada* is simply a "presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all *nonfinal* judgments."  (*People v. Brown* (2012) 54 Cal.4th 314, 324, italics added.)  But the class Dobson has identified (i.e., NGI committees subject to determinate maximum terms of confinement and *who were committed at the time of Dobson's current offense*) would all be subject to *final* judgments.