Filed 4/17/24 (unmodified opn. attached)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SHAWN VINCENT GRAY,<br><br>    Defendant and Respondent. | F085699<br><br>(Super. Ct. No. BF160326A)<br><br>**MODIFICATION OF OPINION (NO CHANGE IN JUDGMENT)** |

**THE COURT:**

It is hereby ordered that the opinion filed herein on April 4, 2024, be modified as follows:

1.  On page 1, delete the second paragraph below the caption and insert the following new paragraph in its place:

"Cynthia J. Zimmer, District Attorney, and Anthony S. Yim, Deputy District Attorney, for Plaintiff and Appellant."

2.  On page 5, delete the third full paragraph under the "DISCUSSION" heading and insert the following two new paragraphs in its place:

"Second, the People did not question whether or how Judge Cannon had the authority to even consider Gray's petition. Instead, they focused on the language of section 1026.5 regarding the calculation of maximum terms of commitment, and whether that statute allowed for a superior court to later recalculate a maximum commitment term. Gray's response brief was similarly circumscribed, and he argued section 1172.75 should be applied here because a failure to do so would unconstitutionally violate the equal protection provisions of the state and federal constitutions.

As a result, both parties' original briefing only addressed the substantive merits of their underlying positions and we therefore ordered supplemental briefing."

Except for the modification set forth, the opinion previously filed remains unchanged.

This modification does not effect a change in the judgment.


SNAUFFER, J.

WE CONCUR:


DETJEN, Acting P. J.


MEEHAN, J

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>SHAWN VINCENT GRAY,<br><br>    Defendant and Respondent. | F085699<br><br>(Super. Ct. No. BF160326A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from orders recalling and modifying a judgment of the Superior Court of Kern County.  Gloria J. Cannon, Judge.

Cynthia J. Zimmer, District Attorney, and Anthony J. Yim, Deputy District Attorney, for Plaintiff and Appellant.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

In January 2016, respondent Shawn Vincent Gray reached a plea agreement with the prosecution and entered no contest pleas to one count of stalking (Pen. Code,[1] § 646.9, subd. (b)) and two counts of making criminal threats (§ 422).  He also admitted a

_____

[1] All undesignated statutory references are to the Penal Code.

prior strike allegation (§§ 667, subds. (c)–(j) & 1170.12, subds. (a)–(e)) and six one-year prior prison commitment allegations (former § 667.5, subd. (b)(1) [hereafter 667.5(b)] .)

The parties further agreed that the trial court would resolve Gray's concomitantly entered pleas of not guilty by reason of insanity (NGI) without a jury trial and instead by reviewing the reports of various "alienists." It did and found Gray NGI.

During his plea colloquy, Gray acknowledged that an NGI verdict would mean that he would be committed to the Department of Mental Health[2] for a maximum term of 19 years four months, and that this commitment could also "be extended if they find you're not restored to sanity at a later point in time." Gray's counsel concurred in full, including to the maximum commitment term. The trial court's minutes confirm that Gray's no contest pleas were "entered on condition" of a "maximum term of 19 years, 4 months." (Capitalization omitted.) At the February 2016 disposition hearing, the court formally imposed this judgment. Gray did not appeal, nor did he ever seek collateral writ relief, and the judgment thereafter became final.

In 2019, effective January 1, 2020, Senate Bill No. 136 (SB 136) amended section 667.5, and limited one-year prior prison term sentencing enhancements to sexually violent offenses. (See current § 667.5(b); Stats. 2019, ch. 590, § 1 (2019–2020 Reg. Sess.); *People v. Jennings* (2019) 42 Cal.App.5th 664, 681 (*Jennings*).) All other one-year sentencing enhancements arising from prior prison commitments under the previous version of that section were declared legally invalid. (*Jennings, supra,* 42 Cal.App.5th at p. 682.)

Two years after that, the Legislature passed Senate Bill No. 483 (SB 483), which made SB 136's changes to section 667.5 partially retroactive so as to include previously final criminal judgments. (Stats. 2021, ch. 728, § 1 ["[I]t is the intent of the Legislature to retroactively apply … [SB 136] to all persons *currently serving a term of incarceration*

---

[2] Now the Department of State Hospitals (DSH).

*in jail or prison for these repealed sentence enhancements.*"  (Italics added.)].)  SB 483 took effect on January 1, 2022, and its provisions were codified as section 1171.1. (Stats. 2021, ch. 728, § 3.)  Section 1171.1 was subsequently renumbered in 2022 without substantive change as section 1172.75.  (Stats 2022, ch. 58, § 12, eff. June 30, 2022.)

Notably, none of the changes to the one-year prison prior criminal *sentencing* enhancements of section 667.5(b) was made applicable to a previously calculated maximum term of commitment in NGI judgments like Gray's.

In January 2023, presumably on Gray's behalf,[3] the Kern County Public Defender filed a "Petition to Recall Maximum Commitment Time and Strike Legally Invalid Enhancement" (some capitalization omitted) in the Kern County Superior Court, in which his deputy specifically cited section 1172.75 and SB 483 in the petition's caption.[4]

Other than this passing reference to SB 483 and section 1172.75 in its caption, the "petition" (or "motion") did not further identify a source for the superior court's underlying authority to recall and modify the terms of Gray's then-final 2016 NGI judgment.  Although the "petition [was] based on the Court's records in this case … [and] also based on any other evidence, including testimony that may be presented at the hearing on this matter," no "evidence" or "testimony" was adduced at the hearing.[5]

---

[3] The petition alleged that a "Mr. Innocent" was requesting the superior court to take judicial notice of the records in Gray's underlying 2016 judgment.  Just who this mysterious "Mr. Innocent" was, or what he had to do with Gray's case, has never been explained.

[4]  In the footers, the petition was instead labeled as a "Motion to Recall Max [*sic*] Term of Commitment."  No explanation was offered for the difference.

[5]  In the argument portion of the petition, the deputy public defender relied on *People v. Hernandez* (2005) 134 Cal.App.4th 1232 (*Hernandez*) and *People v. Nunez* (2012) 210 Cal.App.4th 625 (*Nunez*).  However, both those cases involved a defendant's direct appeal from an NGI judgment, and the question in those cases was whether the calculation of the maximum term of commitment in NGI cases must also reflect section 654's limiting effects on sentences for interrelated offenses.  Both courts held it did.  (See *Hernandez, supra*, 134 Cal.App.4th at p. 1235; *Nunez, supra*, 210 Cal.App.4th at p. 628.)  These two cases not only predated the subsequent statutory changes made to

In a brief three-page response, the People opposed the petition without disputing the applicability of section 1172.75 or SB 483, and instead argued that the petition should be denied because reducing Gray's original maximum commitment term would endanger public safety within the meaning of section 1172.75, subdivision (d)(1). Likewise, the People did not contest the superior court's jurisdiction to entertain Gray's petition in the first instance.

In granting the petition, the court stated:[6]

> "When the Court reads [section] 1026.5(a)(1) and it discusses the maximum *sentence* is the upper term plus the enhancements, we now have the invalid prison priors and I don't believe the Court can *impose* them at this point given they're legally invalid. [¶] I understand [the People's] argument … regarding the discretion of the Court if there is a threat by the defendant. I believe that is addressed by [section] 1026.5(b), which allows the People to file a petition to extend the time. As indicated in [the deputy public defender's] paperwork or her response, even if the Court grants the [petition], the defendant is not scheduled for release now. And while the argument submitted by the People does indicate he's currently still a threat, in 2029 when he would be scheduled for release, it's unknown if he would be a threat at that time. The People have the ability to file to extend his commitment. [¶] For those reasons I'm going to grant the [petition] as prayed. I will recall the *sentence* and reset the *sentence* to a maximum of 13 years, four months." (Italics added.)

---

the sentencing provisions engendered by SB 483 and section 1172.75, but they were direct challenges to an original calculation of the maximum commitment term.

The deputy public defender also analogized to two recently enacted sentencing modifications having nothing to do with section 667.5(b) priors, in which the Legislature had included NGI acquittees in their scope, and where such acquittees were statutorily entitled to petition for relief. We discuss these enactments more fully below, but we emphasize at the outset — and throughout our discussion — that no similar legislative modifications have ever been made with regard to SB 483 or section 1172.75. Moreover, Gray's petition did not mention these disparities, nor attempt to bridge the analytical gap.

[6] To clarify, Judge John S. Somers found Gray NGI and imposed the original 2016 judgment. Judge Gloria J. Cannon handled the 2023 petition and recalled, recalculated, and imposed a different maximum commitment term, which eliminated the six section 667.5(b) one-year priors. The People's appeal is from Judge Cannon's orders.

4.

Thus, in granting Gray's freestanding petition (or "motion"), the court recalled Gray's final 2016 NGI judgment, modified one of its underlying terms by disregarding the six previously calculated section 667.5(b) priors, and recommitted Gray to "any appropriate state hospital pursuant to Penal Code [section] 1026," for a new "maximum term of commitment [of] 13 years 4 months." (Some capitalization omitted.)

To reiterate, neither party — nor the court — ever discussed the court's jurisdiction to consider the petition in the first instance, or the court's authority to modify the 2016 final judgment by substantially altering one of its terms, and recommitting Gray under a different maximum term.

The People appealed, claiming the court erred by recalculating Gray's maximum term of commitment on two grounds: (1) the legislative changes that eliminated most section 667.5(b) sentencing enhancements did not retroactively apply to Gray's 2016 maximum term of commitment; and (2) because Gray continued to be a threat to public safety, any reduced commitment recalculation was erroneous.

## DISCUSSION

There are two distinct, and largely unaddressed, justiciability issues that must be resolved at the outset before we can move on to consider the merits.

First, the People noticed their appeal as being taken from Judge Cannon's "decision to reduce Defendant's sentence," even though Gray was never sentenced. Furthermore, Gray did not challenge the People's appealability allegation.

Second, in their initial appellate briefing, the People did not question whether or how Judge Cannon had the authority to even consider Gray's petition. As a result, both parties' original briefing only addressed the substantive merits of their underlying positions. We therefore ordered supplemental briefing.

As discussed below, we conclude that the People's appeal here was statutorily authorized — although not on the ground the People originally alleged — and we therefore have appellate jurisdiction. However, we also find that the superior court

5.

lacked jurisdiction to entertain and consider Gray's petition in the first instance and its subsequent orders were void.

Because our resolution of this second issue is dispositive, we may not and do not resolve the parties' contentions on the underlying merits.

## I. *Our* Jurisdiction: Appealability

As mentioned above, the People noticed their appeal as being one taken from Judge Cannon's "decision to reduce Defendant's *sentence*." (Italics added.) Correspondingly, in their opening brief the People sought appellate "relief pursuant to [section] 1238 [subdivision] (a)(6) as the trial court reduced the *punishment* imposed by reducing the maximum *confinement* time." (Italics added.) However, Gray was found not guilty by reason of insanity, i.e., he was *acquitted*. Thus, he was never "sentenced," "punished," or "confined," because those terms all refer to judgments imposed following a conviction, but not to NGI state hospital civil commitments.

In their opening brief, the People stated that the question of appealability was "an issue of first impression for the courts," but never went on to propose how we should resolve this question, and instead simply moved on to the merits of their claims. In his response brief, Gray also skirted whether the People's appeal was cognizable, other than to concede that it was "timely filed."

As a result, we first ordered the parties to address three appealability questions: (1) does section 1238, subdivision (a)(6) apply here;[7] (2) if it does not, were Judge Cannon's orders otherwise appealable by the People; and (3) if not, must the People's appeal be dismissed? In other words, before anything else, we must first determine whether Judge Cannon's 2023 actions recalling Judge Somers's 2016 final NGI judgment, and modifying it by recalculating Gray's maximum term of commitment, are properly subject to a People's direct appeal.

---

[7] Undesignated subdivisions refer to section 1238.

It is rudimentary that an appellate court has jurisdiction over a direct appeal only where there is an appealable order or an appealable judgment. (*People v. Montellano* (2019) 39 Cal.App.5th 148, 153; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 [an appealable order or judgment "is a *jurisdictional prerequisite* to an appeal" (italics added)].)

Moreover, whether or not the parties discuss it, *we* are required to "raise the issue on [our] own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by [statute]." (*Jennings v. Marralle, supra*, 8 Cal.4th at p. 126.) Thus, the first part of our supplemental briefing order ensued.

In criminal cases, " '[t]he People's right to appeal is statutory, and appeals that do not fall within the *exact statutory language* are prohibited.' [Citation.] The statutory circumstances permitting the People's appeal are specified in section 1238. [Citation.] [Subdivision (a)(6)] permits the People to appeal from '[a]n order modifying the verdict or finding by reducing the degree of the offense or the punishment imposed or modifying the offense to a lesser offense.' " (*People v. Saibu* (2022) 81 Cal.App.5th 709, 732 (*Saibu*), italics added.)

Here, however, Judge Cannon did not modify the 2016 NGI verdict nor revisit the validity of Gray's no contest pleas and prior conviction admissions. Nor did Judge Cannon reduce the degree of the originally charged offenses — which had none — or modify them to a lesser offense different from those to which Gray had pled no contest in 2016. Finally, because Gray was never convicted of a criminal offense — indeed, he was found not guilty — he was also never punished for his offenses. Thus, by its very terms, subdivision (a)(6)'s "exact statutory language" simply does not apply here. (*Saibu, supra*, 81 Cal.App.5th at p. 732.)

In their supplemental brief, the People have conceded that subdivision (a)(6) is inapplicable. However, they respond to our second appealability question by arguing that

subdivisions (a)(5) and (a)(10) instead apply and, therefore, in answer to our third question, they contend their appeal should not be dismissed.[8]

In his supplemental response brief, Gray also agrees that subdivision (a)(6) does not apply and correctly states that subdivision (a)(10) is inapt. However, he insists that subdivision (a)(5) is also inapplicable and urges that the People's appeal must therefore be dismissed.

We conclude that subdivision (a)(5) does apply.

"[S]ubdivision (a)(5) permits a People's appeal from '[a]n order made after judgment, affecting the substantial rights of the people.' An order after judgment affecting the substantial rights of the People is generally one that *affects the judgment* or its enforcement, alters the defendant's *status*, or hampers the prosecution's ability to carry out *future prosecutorial duties*. [Citation.] Such cases include orders that affect the defendant's sentence *or the timing of his release*." (*People v. Hampton* (2022) 74 Cal.App.5th 1092, 1100 (*Hampton*), italics added.)

Gray first argues that Judge Cannon's 2023 actions in this case were actually not "orders," contending the court instead "recalled judgment, reset the maximum term of his NGI commitment, and reimposed the judgment." Just how Judge Cannon could "recall" a judgment, "reset" a commitment term, and "reimpose" a judgment without *ordering* those things to occur is not explained.

---

[8] In their supplemental reply brief, the People have also abandoned their subdivision (a)(10) claim. That subdivision permits the People to appeal from "[t]he imposition of an unlawful *sentence*" (italics added) but no *sentence* was ever imposed in this case. It seems Judge Cannon also inadvertently misspoke when she too stated that she was recalling and "reset[ting]" Gray's "*sentence*." (Italics added.)

To reiterate, and because this error permeates both parties' briefing despite it being crucial to the resolution of this case, there was no *sentence* in this case, whether by Judge Somers or Judge Cannon, nor was a *sentence* ever modified or "reset." Period. (See *People v. K.P.* (2018) 30 Cal.App.5th 331, 340 (*K.P.*) ["[a]n insanity acquittee is not sentenced; he or she is committed to a state hospital for treatment"].)

Gray offers no authority to support his rather odd definition of the term "order," and we decline to adopt it here. (See Code Civ. Proc, § 1003 ["Every direction of a court or judge, made or entered in writing, and not included in a judgment, is denominated an order."].) Indeed, if these were not "orders," it is unclear how they would possess any legal force in the first place.

Gray next contends that Judge Cannon's actions did not affect the People's substantial rights. To support this argument, he cites a host of cases where courts have found various other kinds of orders that did actually affect the People's rights within the meaning of subdivision (a)(5). He then concludes that because none of these other orders involved what happened here, that subdivision therefore does not apply. However, it is axiomatic that cases are not authority for propositions not considered, especially when it comes to such a negative inference. (*People v. Williams* (2004) 34 Cal.4th 397, 404.)[9]

Moreover, one of Gray's cited authorities makes it clear that "orders entered by the trial court and appealed by the People [that] either directly *altered the judgment* or somehow directly *affected the defendant's status* as it related to the judgment already imposed," are appealable under subdivision (a)(5). (*People v. Benavides* (2002) 99 Cal.App.4th 100, 105.)

Judge Cannon's orders were "indisputably made 'after [the 2016] judgment;' judgment was imposed in [Gray's] case when he was originally [committed in 2016]. [The orders] also affect[ed] the People's substantial rights in that [they] determine[d] whether the trial court [could] exercise its powers to recall the previous judgment and

---

[9] Gray also makes a curiously circular argument that because four of the cases he cites in which subdivision (a)(5) *was* found applicable all "involved errors," and further, because Judge Cannon's orders recalling and recalculating his commitment term were supposedly *not errors*, Judge Cannon's orders were therefore not appealable under subdivision (a)(5). In other words, if the People were to ultimately lose on the merits regarding Judge Cannon's orders, they also should not have been able to have appealed the court's orders in the first place. Needless to say, no authority is cited for this bootstrapping syllogism.

9.

[recommit Gray]. [Citation.] Ultimately, the order[s] resulted in a substantial modification of the original judgment. [Citation.] Thus, the trial court's order[s] determining [Gray] is entitled to relief qualif[y] as '[a]n order made after judgment, affecting the substantial rights of the people,' and is appealable under section 1238, subdivision (a)(5)." (*Hampton, supra,* 74 Cal.App.5th at p. 1101; cf. *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1294–1295 [recalling a judgment and resentencing after Proposition 36 was an order modifying the judgment and therefore "a postjudgment order, which may be appealable under Penal Code section 1238, subdivision (a)(5)"].)

We liberally construe a party's notice of appeal (see Cal. Rules of Court, rule 8.100(a)(2)) so long as it does not prejudicially affect the opposing party. (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882–883 ["Once a notice of appeal is timely filed, the liberal construction requirement compels a reviewing court to evaluate whether the notice, despite any technical defect, nonetheless served its basic function — to provide notice of who is seeking review of what order or judgment — so as to properly invoke appellate jurisdiction."].) Gray has offered nothing to show how he would be prejudiced by our finding that subdivision (a)(5) applies in this case; indeed, he did not even challenge the People's appeal until we ordered him to brief the issue.

We therefore find the People's appeal from Judge Cannon's orders is cognizable under subdivision (a)(5), and our appellate jurisdiction is properly invoked.

## II. The *Superior Court's* Jurisdiction: Recalling Gray's 2016 NGI Judgment

We next ordered supplemental briefing to address whether Judge Cannon had jurisdiction: (1) to entertain and consider Gray's petition/motion to recall the 2016 judgment; and (2) to then recall and modify the judgment by recalculating Gray's maximum term of commitment.

## A. Factual/Procedural Background

As discussed above, Gray's petition did not directly address these jurisdictional questions. Instead, the petition roughly analogized to section 1170.127, a provision which was specifically enacted to overturn our decision in *People v. Dobson* (2016) 245 Cal.App.4th 310 (*Dobson*), superseded in part by Assembly Bill No. 103 (2017-2018 Reg. Sess.), where we had held that the changes to the Three-Strikes law engendered by Proposition 36 did not extend to the maximum terms of commitment for NGI acquittees. (*Dobson, supra,* 245 Cal.App.4th at p. 318.)[10]

Gray's petition also referred to the Legislature's extension of the provisions of Proposition 47 — which reduced certain felonies to misdemeanors — to NGI acquittees, and his counsel quoted: "It is the intent of the Legislature … to allow people who are committed to the State Department of State Hospitals upon a finding of not guilty by reason of insanity … for an offense that would otherwise fall within *the resentencing provisions of Section 1170.126 or 1170.18* of the Penal Code, as enacted by Proposition 36 of the 2012 statewide general election or Proposition 47 of the 2014 statewide general election, *to petition the original committing court for relief under those*

---

[10] Proposition 36, or the Three Strikes Reform Act of 2012, among other things enacted section 1170.126, which specifically authorized petitions for recall and resentencing for some third-strike defendants serving life terms based on non-serious or non-violent felonies. (§ 1170.126, subd, (b); see *People v. Yearwood* (2013) 213 Cal.App.4th 161, 167–168.) Gray was not a third striker and would not have been eligible for relief under Proposition 36 in any event. (See § 1170.126, subd. (c).)

After our decision in *Dobson, supra,* in 2017 the Legislature enacted section 1170.127 (Stats. 2017, ch. 17, § 25 (Assembly Bill No. 103)), and enabled eligible NGI acquittees to take advantage of section 1170.126 and its recall procedures. (§ 1170.127, subd. (a) ["A person who is committed to a state hospital after being found not guilty by reason of insanity pursuant to Section 1026 may petition the court to have his or her maximum term of commitment, as established by Section 1026.5, reduced to the length it would have been had Section 1170.126 been in effect at the time of the original determination."].) Again, however, because he is not a third-striker, Gray's commitment is also unaffected by section 1170.127.

*sections*. This act is intended to nullify the holding in [*Dobson, supra*] (2017 Cal. Legis. Serv. Ch. 17 § 2.)." (Italics added.)[11]

Gray's petition did not mention that no similar legislative action had been undertaken that applied the ameliorative provisions of SB 483 and section 1172.75 to NGI acquittees in the same manner as that afforded under sections 1170.126, 1170.127, or 1170.18, subdivision (o). Similarly, he did not discuss the relevance of the fact that even having recently done so for other NGI acquittees — and certainly being aware of its quite recent enactment of section 1172.75 — the Legislature had not applied that section's provisions to NGI commitments. To date, it still has not.

Thus, not only did Gray's petition not explain how any of these other rather narrowly drawn statutory enactments applied to his case but, more importantly, how they gave the superior court jurisdiction to entertain a petition for recall relief and to then reconsider his previously final NGI judgment. Simply put, even though he nominally relied on them in the petition, Gray never explained how SB 483 or section 1172.75 gave the superior court the authority to recall his 2016 final NGI judgment.

In criminal cases, "[u]nder the general common law rule, a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced. [Citations.] Where the trial court relinquishes custody of a defendant, it also loses jurisdiction over that defendant." (*People v. Karaman* (1992) 4 Cal.4th 335, 344; *People v. Velasco* (2023) 97 Cal.App.5th 663, 669 (*Velasco*).) The only exceptions are statutory. (See, e.g., §§ 1170, et seq., and 1172, et seq.))

---

[11] In 2014, Proposition 47 added section 1170.18, which also created a specific recall and resentencing procedure for those defendants who were then-serving a sentence for the now non-felony misdemeanor offenses. (§ 1170.18, subd. (a).) Significantly, this time NGI acquittees were *included* in its provisions from the outset. (See § 1170.18, subd. (o).) Once more, however, none of Gray's commitment offenses was among those included in Proposition 47's restructuring of the Penal Code, and section 1170.18, subdivision (o) again does not apply to him.

The question thus narrows to whether, *absent specific enabling statutory authority*, this basic principle also deprives a superior court of jurisdiction to recall a final NGI judgment, recalculate its maximum term of commitment, and recommit a defendant who had been lawfully committed and transferred to the custody and control of the state's mental health institutions years before.

## B. Legal Background

"Absent factual or evidentiary disputes, our review for subject matter jurisdiction is de novo." (*People v. Cota* (2023) 97 Cal.App.5th 318, 328–329 (*Cota*); *Velasco, supra,* 97 Cal.App.5th at p. 669 [" 'When the evidence is not in dispute, subject matter jurisdiction is a legal issue, which we review de novo.' "].) The underlying facts and procedural history in this matter are not disputed.

"Once a criminal defendant has been found not guilty by reason of insanity, that person 'is no longer a criminal defendant, but a person subject to civil commitment.' [Citation.] 'The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous.' " (*K.P., supra,* 30 Cal.App.5th at p. 338.)

"In a commitment order the trial court is required to state the ' "maximum term of commitment" [meaning] the longest term of imprisonment which *could have been imposed* for the offense or offenses of which the person was convicted, including the upper term of the base offense and any additional terms for enhancements and consecutive sentences which *could have been imposed* ….' " (*K.P., supra,* 30 Cal.App.5th at p. 338, italics added, quoting § 1026.5, subd. (a)(1).)

Gray does not dispute that this was exactly what Judge Somers did in 2016, and to which he agreed, or that it was incorrect. The 19 year four month maximum NGI commitment term was the sentence that *could have been* imposed had Gray been

13.

convicted of the offenses with which he was charged. However, Gray was not convicted of anything; indeed, he was acquitted.

As discussed above, with regard to section 667.5(b) priors, SB 483 applied SB 136 "retroactively [to] the repeal of sentence enhancements *for prior prison or county jail felony terms ….*" (Sen. Com. on Pub. Safety, Analysis of [SB 483] as amended March 3, 2021, at p. 1, italics added.) Noting that "[e]nhancements add time to a person's *sentence . . . ,*" the Committee on Revision of the Penal Code recommended retroactively applying the elimination of section 667.5(b) enhancements to people *currently held in prisons and jails*, to "ensur[e] that no one is *serving time* based on outdated rules." (Sen. Com. on Pub. Safety, Analysis of [SB 483] as amended March 3, 2021, at pp. 1–3, italics added.) Thus, SB 483 was designed to be "another step forward in sustaining legislative momentum to eliminate unjust *sentence* enhancements and end wasteful *incarceration* spending in favor of community reinvestment." (Sen. Com. on Pub. Safety, Analysis of [SB 483] as amended March 3, 2021, at p. 6, italics added.)

Significantly, not only did SB 136 and SB 483 not address NGI acquittees whose maximum terms of confinement had been calculated years before, and which had lawfully been calculated by including the then-fully applicable 667.5(b) priors, but by definition, an NGI acquittee is neither incarcerated, nor currently being held in a prison or county jail.

Similarly, section 1172.75 specifically only provided affected *convicted* defendants a retroactive procedural remedy for correcting any now-invalid *sentencing* enhancements, even if their pre–2020 criminal judgments were final. Thus, subdivision (b) of section 1172.75 directs the Secretary of the California Department of Corrections and Rehabilitation (CDCR) and/or the correctional administrator in each county to "identify those persons in *their custody* currently *serving a term* for a judgment that includes an enhancement described in subdivision (a) and … provide the name of each person, along with the person's date of birth and the relevant case number or docket

14.

number, to the *sentencing* court that *imposed* the enhancement." (§ 1172.75, subd. (b), italics added.) Again, however, no mention is made of NGI judgments, NGI commitments, or those acquittees who are currently in the care and custody of the DSH.

When the CDCR or the county correctional administrator sends the requisite information included in subdivision (b) of section 1172.75 to the superior court, "the court shall review the judgment and verify that the current judgment includes a *sentencing* enhancement described in subdivision (a)," and "[i]f the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the *sentence* and *resentence* the defendant." (§ 1172.75, subd. (c), italics added.) Once more, no provisions were made for NGI acquittees *in the custody of the DSH* and who were never sentenced in the first place.

Likewise, when resentencing a defendant under section 1172.75, the superior court is directed to "apply the *sentencing* rules of the Judicial Council and apply any other changes in law that reduce *sentences* or provide for judicial discretion so as to eliminate disparity of *sentences* and to promote uniformity of *sentencing*." (§ 1172.75, subd. (d)(2), italics added.) In addition to striking any inapplicable one-year prison priors, "[t]he court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while *incarcerated*, evidence that reflects whether age, time *served*, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original *sentencing* so that continued *incarceration* is no longer in the interest of justice." (§ 1172.75, subd. (d)(3), italics added.)

Finally, and perhaps most importantly, subdivision (c) of section 1172.75 vests a superior court with jurisdiction to "recall," "review," and "resentence" a criminal defendant *if and only if* the CDCR or the applicable county administrators notifies the "sentencing" court that section 1172.75 may apply to a particular defendant.

15.

Section 1172.75 therefore presupposes that the superior court is only authorized to recall the cases of previously *convicted* defendants and, when its other preconditions are met, it only gives the superior court jurisdiction to reconsider an otherwise final judgment of *conviction*. As we have repeated ad nauseum, however, "because an insanity acquittee is relieved of responsibility for their crimes, he or she is not convicted, and therefore may not be sentenced." (*People v. Barner* (2024) __Cal.App.5th__, __ (C095986, Mar. 26, 2024, slip opn. at p. *10) (*Barner*).)

To belabor the obvious, because neither SB 483 nor section 1172.75 made any provisions for final NGI judgments or to their underlying maximum terms of commitment, Gray's reliance on them in his petition was, for purposes of our jurisdictional inquiry, of no help.

### C. Analysis

For our purposes, we begin with *Cota*, *supra,* a true section 1172.75 case involving a criminal resentencing, where we observed that " '[s]ubject matter jurisdiction … is the power of the court over a cause of action or to act in a particular way.' [Citation.] Thus, ' " '[t]he principle of "subject matter jurisdiction" relates to the inherent authority of the court involved to deal with the case or matter before it.' " ' [Citation.] 'By contrast, the lack of subject matter jurisdiction means the entire absence of power to hear or determine a case; i.e., an absence of authority over the subject matter.' [Citation.] In other words, ' " in the absence of subject matter jurisdiction, a trial court has no power "to hear or determine [the] case." ' " (*Cota, supra,* 97 Cal.App.5th at pp. 328–329.)

We explained that "[i]n general, ' "once a judgment is rendered and execution of the sentence has begun, the trial court does not have jurisdiction to vacate or modify the sentence." ' [Citation.] However, there are many important exceptions to this general rule. [Citations.] Although the 'unauthorized sentence' doctrine has sometimes been described as one such exception [citation], our Supreme Court has recently clarified that

16.

it is not.  [Citation.]  The unauthorized sentence doctrine is an exception to the rules of waiver and forfeiture and provides that an unauthorized sentence may be corrected 'at any time, even after a judgment of conviction has become final, and even if the judgment has already been affirmed on appeal.' [fn.] [Citation.]  However, 'to invoke this rule *the court must have jurisdiction over the judgment*.' " (*Cota, supra,* 97 Cal.App.5th at p. 329, italics added.)

Consequently, " 'a freestanding motion challenging an incarcerated defendant's sentence is not a proper procedural mechanism to seek relief.'  [Citation.]  Rather, … '[a] motion is not an independent remedy, but must be attached to some ongoing action. [Citation.]  Thus, a defendant who wishes to challenge a sentence as unlawful after the defendant's conviction is final and after the defendant has begun serving the sentence must do more than simply file a motion in the trial court making an allegation that the sentence is legally infirm.' " (*Cota, supra,* 97 Cal.App.5th at pp. 329–330.)

In *Cota*, the specific question was whether section 1172.75 granted the superior court subject matter jurisdiction over a motion, brought by a pro per defendant, for resentencing pursuant to that section.  (*Cota, supra*, 97 Cal.App.5th at pp. 330–331.) Consistent with decisions from other courts that had considered the question, we concluded that "section 1172.75 does not authorize a defendant to seek resentencing on his or her own motion or petition.  Rather, the process is triggered by [the CDCR or county custodian] identifying a defendant as a person serving a sentence that includes a prior prison term enhancement." (*Cota, supra,* 97 Cal.App.5th at p. 332; see *People v. Burgess* (2022) 86 Cal.App.5th 375, 378–379, 381–382 (*Burgess*) [not only did the superior court lack jurisdiction to adjudicate the defendant's motion for resentencing, the *appellate court* lacked jurisdiction to consider the defendant's appeal of the order denying the petition for resentencing because the defendant's motion was merely an improper " 'freestanding motion' " unattached to any ongoing action; "[a]ppellants' convictions had been final for years," and "there were no ' "specific statutory avenues for

[appellants] to seek resentencing ….' "]; accord *People v. Escobedo* (2023) 95 Cal.App.5th 440, 447 ["section 1172.75 does not authorize … a [freestanding] petition or a motion to strike the unauthorized enhancements"]; *People v. Newell* (2023) 93 Cal.App.5th 265, 268 [§ 1172.75 " 'simply does not contemplate resentencing relief initiated by any individual defendant's petition or motion' "]; cf. *In re Cook* (2019) 7 Cal.5th 439, 451 [in most cases, once the judgment has become final, there is nothing pending to which a motion may attach]; *People v. King* (2022) 77 Cal.App.5th 629, 640 (*King*) [an admittedly unauthorized 30–year–old sentence, but "the trial court had no jurisdiction to entertain King's motion to vacate his sentence, and therefore this court has no appellate jurisdiction to entertain the appeal"].)

The question before us thus narrows even further to whether the maximum term of commitment entered in a final NGI judgment of acquittal is somehow jurisdictionally different from a judgment of conviction in which an actual sentence was imposed. Gray offers no authority that suggests as much, and we have found none.

Instead, Gray argues that Judge Cannon retained "continuing jurisdiction" over Gray's case and points out that superior courts do retain some authority to deal with various ancillary details involving post–judgment concerns that affect NGI acquittees and how their NGI judgments are to be carried out. Nonetheless, none of his cited case authorities involved a modification of the judgment itself, let alone a recalculation of the maximum commitment term.[12]

---

[12] Gray also cites Code of Civil Procedure section 187, which provides in part that "[w]hen jurisdiction is … conferred … all the means necessary to carry it into effect are also given …." Again, however, this begs the question. Our inquiry is whether the superior court's jurisdiction was "conferred" in the first place so as to even *consider* Gray's petition, not whether the court's "means" of exercising that jurisdiction were or were not also "given." Any limited continuing personal jurisdiction section 1026.5 gives to superior courts regarding NGI acquittees does not include an ability to recall a final judgment and recalculate its original terms. If it did, Gray would presumably have cited applicable authority, rather than referring to inapposite section 1172.75 and SB 483.

18.

Rather, Gray's cited authorities are all founded in the quite specific *statutory* provisions of section 1026.5 itself, which describe the procedures for how NGI judgments and commitment orders are to be carried out in the future, including if and when the acquittee's sanity is or is not restored.

Put differently, we acknowledge that unlike criminal judgments, in NGI cases a trial court does retain some limited jurisdiction over an acquittee's case regarding future hearings to determine whether his or her sanity has been restored. (See, e.g., *In re Cirino* (1972) 28 Cal.App.3d 1009, 1014 (*Cirino*) [section 1026's imposition of a duty on the superior court to direct that the defendant be confined in the state hospital "carries with it the power to make whatever orders are necessary to make the confinement effective until such time as the court, after notice and hearing, shall find and determine that his sanity has been restored"]; *People v. Michael W.* (1995) 32 Cal.App.4th 1111, 1116 ["the committing court has continuing power to 'make whatever orders are necessary to make the confinement effective' until the court determines that sanity has been restored"].)

However, this continuing jurisdiction is narrowly circumscribed by section 1026, et seq., and none of these sections addresses the underlying maximum term of commitment. (Cf. *People v. Alvarez* (2019) 32 Cal.App.5th 1267, 1274 ["Nothing in *Cirino* [*supra,*] supports the right of a defendant committed pursuant to an NGI plea to conduct freestanding discovery unrelated to a pending motion, petition or other proceeding."].)[13]

---

[13] Gray's reliance on *People v. Lara* (2010) 48 Cal.4th 216 (*Lara*) is similarly inapt. *Lara* involved whether a trial court had jurisdiction to deal with a claim that an extension of an NGI commitment could stand when the People had failed to timely meet the statutory requirements of section 1026.5 once the original maximum commitment term had been exceeded. (*Lara, supra*, 48 Cal.4th at p. 235.) However, nothing in *Lara* addressed how the maximum commitment term was originally calculated or whether it could later be modified by an NGI acquittee's non-statutory stand-alone "petition" for relief citing inapplicable statutory changes.

"The legislative histories of both [SB 136 and SB 483] contain a clear presupposition by the Legislature of an imposed and executed *sentence*." (*People v. Rhodius* (2023) 97 Cal.App.5th 38, 47 (*Rhodius*), rev. granted/depub. den., February 21, 2024, S283169, italics added). "The findings, costs, and ramifications of [SB 136 and SB 483] cited during the legislative sessions presuppose inmates who are *serving additional time* as a result of the sentencing enhancement under section 667.5(b). The references to financial and familial burdens do not logically follow if a defendant is not actually *serving additional time as the result of an imposed and executed sentence* associated with a section 667.5(b) prior." (*Rhodius, supra,* 97 Cal.App.5th at p. 48, italics added.)[14]

To summarize, in reaction to our decision in *Dobson, supra,* the Legislature responded by enacting section 1170.127, and specifically allowed NGI acquittees a vehicle for relief that parallelled the third–striker relief provided to *convicted* defendants under section 1170.126. (See *People v. Steward* (2021) 63 Cal.App.5th 895, 899.) Similarly, in enacting section 1170.18, the Legislature again created a specific recall

---

[14] The underlying issue in *Rhodius, supra,* was whether section 1172.75 applied when a defendant's prior section 667.5(b) sentencing enhancements were originally imposed but *stayed* — thereby not truly "enhancing" a sentence by imposing *additional* incarceration — and the *Rhodius* court concluded it did not. (*Rhodius, supra,* 97 Cal.App.5th at pp. 41–43.) Other courts to have considered this question have focused on the meaning of the term "imposed," and have disagreed with *Rhodius*. (See *People v. Saldana* (2023) 97 Cal.App.5th 1270, 1276, rev. granted March 12, 2024, S283547; *People v. Christianson* (2023) 97 Cal.App.5th 300, 305, rev. granted, February 21, 2024, S283189; *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1282–1283.) By granting review of the issue, the Supreme Court has agreed to resolve this "imposition" issue, but because section 1172.75 does not apply when *no sentence is imposed* on those priors in the first place — whether executed or stayed — as in an NGI case, these cases are not relevant to the question of an NGI term of commitment and the Supreme Court's resolution of the "imposition" issue will not assist our resolution of the jurisdictional question presented here.

20.

procedure for NGI acquittees who were committed based on now non-felony misdemeanor offenses. (§ 1170.18, subds. (a) & (o).)

And that is exactly the point here, because NGI acquittees were specifically included in both those new recall provisions. No similar subdivision was included in section 1172.75, nor was a new — perhaps section "1172.76" — enacted. The Legislature simply did not provide a similar procedural vehicle for NGI acquittees.

"The Legislature 'is presumed to be aware of all laws in existence when it passes or amends a statute. [Citations.] " 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' " ' " (*Barner, supra*, __Cal.App.5th at p.__ (slip opn. at pp. *16-17), quoting *In re Greg F.* (2012) 55 Cal.4th 393, 407.)

We digress to note in dicta that for the first time on appeal Gray has raised an equal protection claim, alleging that any disparate treatment for recalling maximum NGI commitment terms versus criminal conviction sentences is unconstitutional. He contends that to deny him the recalculation benefits statutorily afforded to sentenced criminal defendants — and to a limited group of other NGI acquittees whose maximum terms were specifically allowed to be recalculated under other statutorily authorized provisions — would deny him his state and federal guarantees of equal protection under the law. (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 7).

First, Gray forfeited this equal protection claim by failing to raise it in the superior court. (*Barner, supra,* __Cal.App.5th at p.__ (slip opn at p. *35), citing *People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14; see *People v. Rogers* (2006) 39 Cal.4th 826, 854, and *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447.)

Second, forfeiture notwithstanding, this places the constitutional cart before the jurisdictional horse and assumes the superior court had the authority to consider Gray's 2023 petition in the first place — an issue that we resolve against him — and further

assumes that we may consider a constitutional claim raised for the first time in a *respondent's* appellate brief where the determinative justiciability questions at issue were never raised or developed below, and where the constitutional claim has been tardily raised in a respondent's brief on the merits.

Put differently, if the superior court did not have jurisdiction to entertain Gray's petition in the first place, *our* resolution of a hypothetical underlying constitutional claim that necessarily assumes such jurisdiction would be an advisory opinion at best, and judicial overreach as a matter of fact. We shall leave any equal protection contentions for another day.

Ultimately, Gray's argument that NGI acquittees should be entitled to a procedural mechanism analogous to section 1172.75's, which would then have given the superior court jurisdiction to entertain his petition to challenge his maximum term of commitment, must be addressed to the Legislature. We apply the law as written, but we do not write it. (See *People v. Superior Court (Guevara)* (2023) 97 Cal.App.5th 978, 981, review granted March 12, 2024, S283305 ["The role of the judiciary is to interpret statutes, not to draft them."].)

Finally, in his supplemental response brief Gray asks us for the first time to "constructively" construe his original unauthorized superior court petition/motion "as a remedy in habeas corpus, under which the superior court would had [*sic*] jurisdiction to entertain and consider …."

Whether Gray could have made — or in the future may make — a collateral attack on his NGI maximum term of commitment on habeas corpus, or if and when such a claim was — or is — ripe for review considering he has not yet been hospitalized for even the 13 year 4 month recalculated commitment term Judge Cannon imposed, are issues not before us and were not properly developed below. We do not express any opinion in this regard.

Moreover, not only does this belated habeas corpus argument dodge the jurisdictional question as to whether the superior court had the authority to consider the original non-habeas petition that Gray actually did file, he provides no authority for an appellate court to retrospectively transform the *People's* direct appeal into one from a non-existent superior court order granting a never-filed petition for habeas corpus relief.[15]

The cases Gray alludes to in support of this "constructive" request involved either direct appeals where a *party's appeal* may in a reviewing court's discretion be considered instead as a petition for a writ of mandate or prohibition, where a *writ petition* in the appellate court could be recharacterized as lying in mandate rather than prohibition, or where a mandate/prohibition petition could instead be construed as a habeas petition. None applies here. Gray has neither appealed nor sought any type of writ relief, either here or below. We therefore decline his invitation.

Because neither Gray, "Mr. Innocent," nor the Kern County Public Defender had authority under section 1172.75, SB 136, SB 483 — or any other authority for that matter — to file a standalone petition in this matter, the superior court also lacked jurisdiction to consider it, let alone to then go on to modify and recalculate Gray's 2016 maximum commitment term. (*Burgess, supra*, 86 Cal.App.5th at p. 381, 382 [trial court lacked jurisdiction to adjudicate Burgess's freestanding motion for resentencing under § 1172.75]; cf. *King, supra,* 77 Cal.App.5th at p. 634 [" 'once a judgment is rendered and execution of the sentence has begun, the trial court does not have jurisdiction to *vacate or modify the sentence*' " (italics added)].)

---

[15] It also undermines Gray's contention that the People's appeal must be dismissed because it did not neatly fall within section 1238 because the People are statutorily entitled to appeal from a superior court's grant of habeas corpus relief. (See § 1506.)

### III. Conclusion

The People's appeal is properly before us as taken from "order[s] made after judgment, affecting the substantial rights of the people" within the meaning of section 1238, subdivision (a)(5). (See *Hampton, supra,* 74 Cal.App.5th at p. 1100.)

We hold that the superior court lacked jurisdiction to entertain Gray's "Petition to Recall Maximum Commitment Time and Strike Legally Invalid Enhancement" pursuant to "Pen. Code § 1172.75 and SB 483," because those provisions did not and do not apply, nor did any other authority permit the superior court to consider and grant the relief Gray sought.

As a result, the court's orders recalling the 2016 judgment and recalculating Gray's maximum term of commitment were " 'void on [their] face.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 200.) On an appeal from void orders, our appellate jurisdiction is limited to reversing the superior court's void acts. (*Ibid.*) We do so here.

We emphasize that our holding is narrow because we resolve this matter at the threshold. We may not and do not consider the parties' other claims regarding the underlying merits, constitutional or otherwise, nor do we opine whether Gray may have alternative avenues for relief.

### DISPOSITION

The superior court's orders recalling and modifying the 2016 NGI judgment by recalculating Gray's maximum term of commitment are reversed and vacated. The court is ordered to instead enter a new and different order denying Gray's petition in its entirety.

24.

The superior court clerk is directed to prepare all appropriate orders and serve the Department of State Hospitals and any other necessary parties.

SNAUFFER, J.

WE CONCUR:

DETJEN, Acting P. J.

MEEHAN, J.

25.